# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DONNA M. STANDARD,** <br> **Plaintiff** <br> v. <br> **CRAIG CAMERON, et al.,** <br> **Defendants** | **CASE NO. 1:17-CV-689 AWI BAM** <br><br> **ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO CHANGE VENUE, AND ORDER TRANSFERRING CASE TO THE NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION** <br><br> (Doc. Nos. 5, 6) |

This case stems from the delivery of a horse to Plaintiff Donna Standard ("Standard") by Defendants Craig Cameron ("Craig") and Dalene Cameron ("Dalene") doing business as Craig Cameron Horsemanship and Double Horn Ranch (collectively "the Camerons" or "Defendants"). Standard brings state law claims against Defendants for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, trespass to chattels, and conspiracy. Defendants have filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a Rule 12(b)(3) motion to dismiss for improper venue, a Rule 12(b)(5) motion to dismiss for improper service of process, a Rule 12(b)(6) motion to dismiss for failure to state a claim, and a 28 U.S.C. § 1404 motion to change venue. After review, the Court will deny the Rule 12(b)(1) motion, grant the Rule 12(b)(2), transfer this case to the Northern District of Texas, and decline to address the remaining issues.

## GENERAL BACKGROUND

From the Complaint, Defendants are citizens of Texas. On March 5, 2010, Standard attended an equestrian competition called "Road To The Horse"[1] in Murfreesboro, Tennessee. While at the event, Standard purchased an American Quarter Horse (Registration No. 4995791) called WR Shining Alamo ("Alamo") from the owner and breeder, Joe Wood. After Standard purchased Alamo, Craig selected Alamo as his horse for the competition and began to call Alamo "Troubadour" during the competition. After three days of riding and training, Alamo and Craig won the competition. After Alamo won, Standard asked Dalene if she knew someone who could transport Alamo from Tennessee back to Standard's home in California. Dalen offered to transport Alamo from Tennessee to the Cameron's ranch in Erath County, Texas and have Craig train Alamo. Standard was going to attend the Cameron's horsemanship clinic at the Cameron's ranch in New Mexico in October 2010, and Craig would deliver Alamo to Standard at his New Mexico ranch at that time. Dalene quoted a cost of between $900 to $1,000 per month from mid-March until October 2010 for the services. Standard agreed to have the Cameron's train Alamo. The Cameron's took possession of Alamo from breeder Joe Wood on March 7, 2010.

In 2016, Standard attended another Road To The Horse event. At the event, Standard began to question whether the horse she received from the Camerons was Alamo. Standard obtained the DNA of the horse that was in her possession. The results of the DNA showed that the horse was not Alamo, rather it was WR Shiners Gin ("Gin"), the half-brother of Alamo. In addition to the DNA results, photographs of Alamo and Gin show that the bone structure (which does not change) of these two horses are not the same. Thus, DNA evidence conclusively demonstrates that the horse delivered by the Camerons and currently in Standard's possession is not Alamo, even though Alamo was entrusted to the Camerons on March 7, 2010. Rather, the horse delivered by the Camerons is Gin. In 2010, Standard is informed and believes that Gin was not at the 2010 Road To The Horse event, but instead was shipped to Fort Worth, Texas about 2 to 3 weeks after the 2010 Road To The Horse event.

---

[1] Road To The Horse is a three day event with a minimum of three participating horse trainers who select an unbroken horse, train it as much as possible in three hours, and then participate in an obstacle course at the end of the three hour training session on the following day.

2

Standard paid Joe Wood $3,000 for Alamo. However, because Alamo won the 2010 Road To The Horse event, Standard believes that Alamo's value exceeds $200,000.00. While Alamo was a rideable horse, Gin is not. Standard alleges that she has suffered in excess of $200,000 in compensatory damages, and believes that the fraudulent conduct of the Camerons entitle her to exemplary damages.

**I.    Motion To Dismiss Due To Lack Of Subject Matter Jurisdiction**

*Defendants' Argument*

The Camerons argue that Standard cannot meet the amount in controversy requirement. Standard paid the Camerons $900 to $1,000 to train and board Alamo from April to September 2010, and paid $3,000 for Alamo. Winning the Road To The Horse competition could not have increased Alamo's value to anywhere close $75,000.00, let alone the $200,000 alleged in the Complaint. Alamo was an untrained horse, who competed with two other untrained horses, after receiving three hours of training.

*Standard's Opposition*

Standard argues that if the allegations are taken as true, then there is over $75,000 in controversy. The Camerons are well known in the horse training industry and have participated in and conducted numerous horse related events. Further, punitive damages are alleged and must be taken into account in establishing the amount in controversy.

*Legal Standard*

Federal Rules of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. Vacek v. United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006). Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at 1250. Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the

allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction. See Leite, 749 F.3d at 1121; see also Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). However, courts do not accept the truth of legal conclusions merely because they are cast in the form of factual allegations. Holy See, 557 F.3d at 1073.

Federal courts may exercise "diversity jurisdiction" when the amount in controversy exceeds $75,000 and the parties are in complete diversity, i.e. the citizenship of each plaintiff is different from that of each defendant. See Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also 28 U.S.C. § 1332(a).

*Discussion*

The Camerons have not submitted affidavits or other evidence outside of the complaint as part of their Rule 12(b)(1) motion. Rather, they attack the sufficiency of the allegations. Therefore, this is a facial attack on subject matter jurisdiction. See Leite, 749 F.3d at 1121; Savage, 343 F.3d at 1040 n.2. Further, there is no argument that there is an absence of complete diversity of citizenship. The Camerons appear to be citizens of Texas, and Standard appears to be a citizen of California. The issue is the amount in controversy.

The factual allegations, which the Court accepts as true, see Leite, 749 F.3d at 1121, show that there is more than $75,000 in controversy. The $3,000 cost of Alamo and the $5,400 to $6,000 in boarding and training fees for six months (April 2010 to September 2010) are properly and clearly alleged, as is the $200,000 current value of Alamo. The Complaint explains that Alamo is worth over $200,000 because he won the 2010 Road To The Horse event and Standard estimates his value would exceed $200,000.00. See Complaint ¶ 21. Under California law, a property owner's testimony is admissible as to the property's value. See Cal. Evid. Code § 813; Bateman v. Donovan, 131 F.2d 759, 764 (9th Cir. 1942); Prussin v. Bekins Van Lines, LLC, 2017

4

U.S. Dist. LEXIS 42813, *7 (N.D. Cal. Mar. 23, 2017); Schroeder v. Auto Driveaway Co., 11 Cal.3d 908, 921 (1974). Although the horse in Standard's possession is Gin, as of March 5, 2010, Standard owned Alamo. Thus, the complaint shows two bases for the $200,000 valuation: Alamo won the 2010 competition and owner Standard's valuation. The $200,000 figure is not a mere legal conclusion. The attacks made by the Camerons presuppose information that is not in the complaint, and partially misconstrues the allegations in the Complaint.[2] There is no basis for the Court to discount the estimate, which the Court assumes to be true. See Leite, 749 F.3d at 1121. The $200,000 estimated value by itself easily exceeds the $75,000 controversy threshold. Additionally, an unknown amount of punitive damages are requested and thus, in controversy. See Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001).

Given the express allegations that total approximately $209,000 (exclusive of punitive damages), the Complaint adequately alleges an amount in controversy that exceeds $75,000.00. See Leite, 749 F.3d at 1121. Because the Complaint adequately alleges diversity jurisdiction, the Camerons' Rule 12(b)(1) will be denied.

**II.     Motion To Dismiss Due To Lack Of Personal Jurisdiction**

*Defendants' Argument*

Defendants argue *inter alia* that they do not have sufficient minimum contacts with California. All of the allegations in the Complaint relate to activity that occurred outside of California, including the purchase of Alamo and delivery of Gin. Even the alleged act of switching Alamo with Gin occurred outside of California. Defendants argue that none of their activities were directed at California, since the training occurred in Texas, Alamo was purchased in Tennessee, and delivery occurred in New Mexico. It is not enough to foresee that the horse would eventually end up in California. Defendants argue that they have done nothing to bring

---

[2] As indicated above, the Camerons argue that the Complaint shows that only three horses competed, of which Alamo was one. That argument is wrong. The cited portion of the Complaint, Footnote 1 of Page 4 describes Road To The Horse as an event with "a minimum of (3) three participating horse trainers who select an unbroken horse, train it as much as possible in 3 hours, and then participate in an obstacle course . . . ." Complaint at n.1. "[A] minimum of three trainers" is not the same as alleging "three trainers." "[A] minimum of three trainers" means three *or more* trainers.

5

themselves into the California market, and it was not foreseeable that they would be subject to California jurisdiction. However, even if the Court finds that purposeful availment, it would not be reasonable for California to assert jurisdiction over Defendants for numerous reasons, including that the events at issue have no connection to California, the Defendants reside in Texas without connection to California, the corporate defendant is a Texas entity that is not doing business in California, and all witnesses and documents other evidence is located outside of California.

*Plaintiff's Opposition*

Standard argues that personal jurisdiction exists because of the Defendants' contacts with California. Defendants regularly provide teaching clinics in Cottonwood, California, and the Camerons regularly appear in Leona Valley, Paicinas, and Ventura for appearances and business activities. The Camerons have also attended and taught at equine events in Sacramento and Pomona. The Camerons also have a television show that is broadcast into California, where they advertise their products and training services. The transaction in this case is connected to California because the transaction involves training and transportation of horses and participating in the Cameron's clinics. It was the Camerons' television show that attracted Standard to Cameron and his training techniques, and it was the television show that caused her to entrust Alamo to the Camerons. Standard received invoices in California from the Camerons, and paid for Alamo's purported boarding and training from California and a California bank. Standard argues that she has been damaged only as a result of Defendants' tortious conduct of providing her with Gin instead of Alamo.

*Legal Standard*

The plaintiff bears the burden of establishing that personal jurisdiction is proper. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Where a defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Although plaintiffs cannot "simply rest on the bare allegations of [their] complaint," uncontroverted allegations in the complaint must be taken as

true. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Courts do not assume the truth of allegations in a pleading which are contradicted by affidavit, but courts do resolve factual disputes in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 134 S.Ct. 746, 753 (2014); Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Since the California "long-arm statute" permits the exercise of personal jurisdiction to the full extent permitted by the U.S. Constitution, a court's personal jurisdiction inquiry centers on whether exercising jurisdiction comports with due process. Daimler, 134 S.Ct. at 753; Picot, 780 F.3d at 1211. In order for a state to exercise personal jurisdiction over a nonresident, the "nonresident generally must have certain minimum contacts with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Picot, 780 F.3d at 1211. There are two types of personal jurisdiction, general and specific. Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1779-80 (2017).

General jurisdiction permits a court to exercise personal jurisdiction over a defendant for any claim, even if the basis of the claim occurred entirely outside of the forum state. See id. at 1780. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general jurisdiction.]" Daimler, 134 S.Ct. at 760. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." Bristol-Myers, 137 S.Ct. 1780; Daimler, 134 S.Ct. at 760. For corporate defendants, the place of incorporation or principle place of business are places where the corporation is fairly regarded as "at home" and are the paradigm bases for general jurisdiction. Daimler, 134 S.Ct. at 760. Those places have the virtue of indicating only one place and being easily ascertainable. Id. General jurisdiction is found where a defendant has sufficient contacts so as to "constitute the kind of continuous and systematic general business contacts that approximate physical presence." In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013).

Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation," and the "defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014). Stated differently, "[i]n order for a

7

court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers, 137 S. Ct. at 1781 (quoting Goodyear Dunlop Tires Operat5ions, S.A. v. Brown, 564 U.S. 914, 919 (2011)). The Ninth Circuit utilizes a three part test to determine whether specific jurisdiction exists: (1) the non-resident must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the form, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Picot, 780 F.3d at 1211; Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs, but if the plaintiff is successful, the burden then shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would be unreasonable. Picot, 780 F.3d at 1211-12; Mavrix Photo, 647 F.3d at 1228. Personal jurisdiction must exist for each claim asserted. See Picot, 780 F.3d at 1211. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." In re W. States, 715 F.3d at 742.

The first prong contains two distinct concepts, "purposeful direction" and "purposeful availment." Lazar v. Kroncke, 862 F.3d 1186, 1201 (9th Cir. 2017). The "purposeful availment" prong is generally used to analyze contract claims, while the "purposeful direction" prong is used to analyze tort claims. Picot, 780 F.3d at 1212.

With respect to the first prong of "purposeful direction," courts utilize the three-part "effects test." Picot, 780 F.3d at 1213; Schwarzenegger, 374 F.3d at 803. Under the effects test, there is "purposeful direction" by a non-resident defendant if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that he knows is likely to be suffered in the forum state. Picot, 780 F.3d at 1214; Schwarzenegger, 374 F.3d at 803. An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." In re W. States, 715 F.3d at 743 n.25. Conduct is "expressly aimed" at a forum if the conduct "directly targets" the forum. Brayton

8

Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010). The "express aiming" analysis "depends to a significant degree on the specific type of tort or other wrongful conduct at issue." Picot, 780 F.3d at 1206; Schwarzenegger, 374 F.3d at 807. However, courts are "limited to 'the defendant's suit-related conduct.'" Picot, 780 F.3d at 1215 n.3 (quoting Walden, 134 S.Ct. at 1121). Courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S.Ct. at 1122; Picot, 780 F.3d at 1214. "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." Walden, 134 S.Ct. at 1122, 1125; Picot, 780 F.3d at 1214. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. at 1125; see also Picot, 780 F.3d at 1214. Finally, while there must be foreseeable harm in the forum, the bulk or brunt of the harm need not be suffered in the forum, rather it is sufficient if the defendant's "conduct caused harm that it knew was likely to be suffered in the forum." Brayton Purcell, 606 F.3d at 1131.

With respect to the first prong of "purposeful availment," that concept requires a finding that the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Picot, 780 F.3d at 1212; Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001). Contacts that are "random, fortuitous, or attenuated" are insufficient, rather there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." Picot, 780 F.3d at 1212. "In determining whether such contacts exist, [courts] consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)). However, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." Picot, 780 F.3d at 1212.

With respect to the second prong ("arising out of or relating to"), the Ninth Circuit refers to this prong as the "but for" test. In re W. States, 715 F.3d at 742. Under the second prong, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." Id. That is, a plaintiff must show that "but for" the

9

1  defendant's forum related conduct, the injury would not have occurred.  Myers v. Bennett Law
2  Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

3  With respect to the third prong ("reasonableness"), the Ninth Circuit considers seven
4  factors:  (1) the extent of the defendant's purposeful interjection into the forum state, (2) the
5  burden on the defendant in defending in the forum, (3) the extent of the conflict with the
6  sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5)
7  the most efficient judicial resolution of the controversy, (6) the importance of the forum to the
8  plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.
9  In re W. States, 715 F.3d at 745; Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002).

*Discussion*

1. General Jurisdiction

It is unclear whether Standard is arguing that general jurisdiction exists over the Camerons in California.  To the extent that Standard maintains this position, Standard has presented evidence that Craig regularly holds a teaching clinic in Cottonwood, California, the Camerons are associated with and regularly appear at Extreme Cowboy Association events in three California cities, and the Camerons have attended and taught at the Equine Affair in Pomona, California since 2008.  See D. Standard Dec. ¶ 11 & Ex. C.  Standard has attached a 2017 web-page schedule for the Extreme Cowboy Association events in which approximately 7 events in California are identified.  Further, Standard contends that Craig appears in a television program that is broadcast into California.  In contrast, Craig declares that he resides in Texas, attends two equine events in California per year, does not sponsor equine events in California, over the past decade he has been in California approximately twice per year, he does not attend any Extreme Cowboy Association events in California, and he has no control over where the television program is broadcast.  See C. Cameron Dec. ¶¶ 2, 3, 4, 6, 8; Supplemental C. Cameron Dec. ¶¶ 2, 4, 6, 9.  Dalene similarly declares that she recalls going to California twice in her life.  See Supplemental D. Cameron Dec. ¶ 2.

The Court concludes that Standard has not shown that general jurisdiction exists.  While the Court can say that there is no dispute that Craig "regularly" travels to California for equine

1 | related purposes, those travels are insubstantial. The evidence suggests that Craig spends
2 | approximately 10 days in California per year, at best. See D. Standard Dec. Ex. C; Supplemental
3 | C. Cameron Dec. ¶¶ 2, 4, 6, 9. Such contact is nowhere close to establishing California as a
4 | domicile, place of incorporation, or principal place of business for any defendant. One cannot feel
5 | "at home" or have a sufficient "physical presence" in a State in which one spends only 10 days in
6 | that State, and 355 days out of it. Because Standard has not met her burden, see Mavrix Photo,
7 | 647 F.3d at 1223, this Court cannot exercise general jurisdiction over Defendants. See Bristol-
8 | Myers, 137 S.Ct. 1780; Daimler, 134 S.Ct. at 760; In re W. States, 715 F.3d at 741.

### 2. Specific Jurisdiction

Standard alleges five causes of action: two contract based causes of action (breach of contract and breach of the implied covenant of good faith and fair dealing) and three tort causes of action (fraud, trespass to chattels, and conversion).[3] The Court will examine the contract and tort claims separately.

#### a. Tort Based Claims

Standard's tort claims are based on Defendants' allegedly concealing the fact that the horse delivered to her in October 2010 was not Alamo, even though Defendants promised to pick up, transport, care for, board, train, and later deliver Alamo to her. See Complaint ¶ 24. Defendants would train and board Alamo in Texas, and then deliver Alamo to Standard in New Mexico. See id. at ¶¶ 25, 26. The horse delivered to Standard in New Mexico was Gin, not Alamo. See id. at ¶ 38. By delivering Gin instead of Alamo, Defendants have interfered with Standard's use and enjoyment of Alamo and wrongfully exercised control over Alamo. See id. at ¶¶ 54, 64.

There is not purposeful direction. None of the alleged conduct by Defendants occurred or was connected to California. Alamo was purchased by Standard at the Road To The Horse event in Tennessee. See id. at ¶ 11. Any representations by Defendants regarding training, boarding, and transporting Alamo occurred in Tennessee. See D. Standard Dec. ¶ 15. The training and

---

[3] The Complaint also contains a conspiracy claim. See Complaint at § V. Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudi Arabia, Ltd., 7 Cal.4th 503, 510-11 (1994). Therefore, the Court will not consider the conspiracy claim as alleged in the Complaint.

11

boarding occurred in Texas. See id. There was no transport to California, and delivery occurred in New Mexico. See id. at ¶ 13. The only connection that Defendants have to California is that Standard resides in California and Standard experienced harm in California. However, as stated above, courts must look "to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." Walden, 134 S.Ct. at 1122 (emphasis added); Picot, 780 F.3d at 1214. "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." Walden, 134 S.Ct. at 1122, 1125; Picot, 780 F.3d at 1214. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. at 1125; see also Picot, 780 F.3d at 1214. Under *Walden* and *Picot*, Defendants have no meaningful contact with California with respect to Standards' tort claims. Standard's injury alone does not create specific jurisdiction. See Walden, 134 S.Ct. at 1122, 1125; Picot, 780 F.3d at 1214.

Without purposeful direction, the Court does not have specific jurisdiction over Standard's tort claims. See In re W. States, 715 F.3d at 742.

### b. Contract Based Claims[4]

Standard's contract based claims share a substantially similar basis to her tort claims. Standard purchased Alamo in Tennessee. See D. Standard Dec. ¶ 1. While in Tennessee, Defendants orally agreed to transport Alamo to their ranch in Texas, to train and board Alamo in their ranch in Texas, and then transport Alamo to Standard in New Mexico. See Complaint ¶¶ 12, 35-36; D. Standard Dec. ¶ 15. Defendants generated invoices that were sent to Standard in California, and Standard mailed checks from California to Defendants in Texas for the training and boarding of Alamo. See D. Standard Dec. ¶¶ 11(d), 15. Standard paid between $900 and $1,000 per month from mid-March/April 2010 through October 2010. See id. at ¶¶ 12, 21, 35.

---

[4] Standard's claim breach of the covenant of good faith and fair dealing sounds in contract because it is dependent on the existence of the underlying contract to train, board, and transport Alamo. See Stanford Ranch v. Maryland Cas. Co., 89 F.3d 618, 625 (9th Cir. 1996) ("[A] claim dependent upon the existence of an underlying contract, sounds in contract, as opposed to tort."); Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal.4th 917, 937 (2004) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

There is not personal availment. To be sure, there is an oral contract that exists between a resident of California and residents of Texas. However, the mere existence of a contract does not establish purposeful availment. See Picot, 780 F.3d at 1212; Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). The oral contract was made and negotiated in Tennessee, not California. It appears that the contract envisioned a short term relationship that was to last approximately 6 months. All services rendered pursuant to the oral contract by Defendants were to occur and did occur in Texas and New Mexico. The contract envisioned no conduct or performance by Defendants in California, and there is no evidence that Defendants travelled to California in connection with the oral agreement. The only conduct related to California under the contract was invoices that were sent to and paid by Standard from California. Standard's payment of invoices does not constitute purposeful availment by Defendants. See Picot, 780 F.3d at 1212 (noting *inter alia* that payment of $20,000 per month and reimbursement of expenses to a Michigan defendant from a California plaintiff was insufficient to establish purposeful availment in California where the contract was formed in Michigan and where it was understood that the defendant would discharge most of his contractual duties).

The facts of this case are similar to one aspect of *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990). In *Sher*, a Florida law firm represented a California client in a criminal proceeding in Florida. See Sher, 911 F.2d at 1362. The Florida law firm accepted payments from a California bank and made phone calls and sent letters to California. See id. The Ninth Circuit held that accepting payments, making phone calls, and sending correspondences did not alone constitute purposeful availment. See id.[5] The Ninth Circuit noted that the firm promoted legal representation to be performed in Florida, not California, and the firm did not solicit Sher's business in California, rather Sher came to the firm in Florida. See id. Here, as in *Sher*, Defendants promoted equine services to Standard that were to be performed in Texas and arguably New Mexico, but not California. Defendants did not seek out Standard in California, rather

---

[5] However, purposeful availment was ultimately found because the totality of the conduct, including trips to California and most importantly recording a deed of trust in California to ensure payment from Sher, created a substantial connection to California. See Sher, 911 F.2d at 1363-64. In the case at bar, there were no trips to California in connection with the oral agreement and there was no deed of trust recorded in California against Standard by the Camerons.

13

Standard and Defendants met and then negotiated and formed the oral agreement in Tennessee. See Complaint ¶ 12. As in the relevant portion of *Sher*, there is nothing beyond short term invoicing and receiving payments from California. The invoices to and payments by Standard are insubstantial. See Sher, 911 F.2d at 1362; see also Picot, 780 F.3d at 1212.

In sum, Standard has not shown purposeful availment by Defendants. Without purposeful availment, the Court cannot exercise personal jurisdiction over the contract claims. See In re W. States, 715 F.3d at 742.

### 3. Transfer Under 28 U.S.C. § 1631

The Court has found that it lacks personal jurisdiction over each of the claims asserted by Standard. 28 U.S.C. § 1631 provides in relevant part that whenever a "civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed . . . ." Section 1631 has been applied to situations in which courts lack personal jurisdiction. See Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 761-62 (9th Cir. 1990); LG Corp. v. Huang Xiaowen, 2017 U.S. Dist. LEXIS 89245, *16-*18 (S.D. Cal. June 8, 2017); Security Alarm Fin. Enters., L.P. v. Nebel, 200 F.Supp.3d 976, 987 (N.D. Cal. 2016); High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elect. Pet Prod. Co., 2014 U.S. Dist. LEXIS 29772, *22-*23 (E.D. Cal. Mar. 6, 2014).

The Ninth Circuit "has taken a broad view of when transfer [under § 1631] is appropriate, recognizing that 'normally transfer will be in the interest of just because normally dismissal of an action that could be brought elsewhere is time consuming and justice defeating.'" Amity Rubberized Pen Co. v. Market Quest Grp., Inc., 793 F.3d 991, 996 (9th Cir. 2015) (quoting Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990)). A § 1631 "transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." Amity, 793 F.3d at 996. This standard is a "low bar." Id. Because of the mandatory nature of § 1631, a formal motion to transfer under § 1631 is unnecessary. Miller, 905 F.2d at 262. A district court's failure to determine whether the action could have been brought in another district and whether a transfer is in the interest of justice constitutes an abuse of discretion. See id.

Here, the Complaint alleges that the Camerons are residents of Erath County, Texas, and the Camerons admit that they are residents of Bluff Dale, Texas. See Docs. 6-2, 6-3. Moreover, the Camerons have requested that this case be transferred under 28 U.S.C. § 1404 to the Northern District of Texas. See Doc. No. 6-1. Because Bluff Dale, Texas is in Erath County, see https://en.wikipedia.org/wiki/Bluff_Dale,_Texas, and Erath County is in the Fort Worth Division of the Northern District of Texas, see http://www.txnd.uscourts.gov/location/fort-worth, the Court finds that the Northern District of Texas – Fort Worth Division is a court in which this matter could have been brought for purposes of § 1631. Moreover, the Court does not find that Standard brought this lawsuit in bad faith, nor can the Court find that the lawsuit is frivolous. See Amity, 793 F.3d at 996. Although Defendants contend that all of Standard's claims are barred by the applicable statute of limitations, the Court cannot hold as a matter of law at this time that the delayed discovery rule has no application to this case. See Stella v. Asset Mgmt. Consultants, Inc., 8 Cal.App.5th 181, 191-93 (2017) (describing the "discovery rule" exception to the statute of limitations and noting that application of this rule is generally a question of fact); see also Houston Livestock Show & Rodeo, Inc. v. Hamrick, 125 S.W.3d 555, 569-70 (Tex. App. – Austin 2003, no pet.) (same). Therefore, the Court concludes that it is in the interest of justice to transfer this case to the Northern District of Texas – Fort Worth Division.

### III.    Remaining Motions

The Court has resolved Defendants' Rule 12(b)(1) and 12(b)(2) motions. In light of the impending transfer of this case to the Northern District of Texas, Defendants' 28 U.S.C. § 1404 and Rule 12(b)(3) motions are now moot. Defendants' Rule 12(b)(5) and Rule 12(b)(6) motions remain unresolved. Because this case will be pending in the Northern District of Texas, and because this Court cannot exercise personal jurisdiction over Defendants, the Court will not resolve these remaining motions on the merits. Instead, the Court will deny the motions without prejudice to refiling in the Northern District of Texas. If Defendants wish to pursue these issues, then the Northern District of Texas will have the benefit of distinct briefing that is unencumbered by the matters resolved in this order.

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Rule 12(b)(1) motion is DENIED;
2. Defendants Rule 12(b)(2) motion is GRANTED in part;
3. This matter is TRANSFERRED forthwith pursuant to 28 U.S.C. § 1631 to the Northern District of Texas – Fort Worth Division;
4. Defendants' Rule 12(b)(3) and 28 U.S.C. § 1404 motions are DENIED as moot;
5. Defendants Rule 12(b)(5) and Rule 12(b)(6) motions are DENIED without prejudice to refiling in the Norther District of Texas, if Defendants so desire; and
6. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated: November 14, 2017

_____
SENIOR DISTRICT JUDGE